IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WHEATON COLLEGE, | ) ) ) | Civil Action No. |
| Plaintiff, | ) ) ) | 1:12-cv-01169-ESH |
| v. | ) ) | |
| KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; HILDA SOLIS, Secretary of the United States Department of Labor; UNITED STATES DEPARTMENT OF LABOR; TIMOTHY GEITHNER, Secretary of the United States Department of the Treasury, and UNITED STATES DEPARTMENT OF THE TREASURY, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. i

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ........................................................................................................................................ 2

I.   THE COURT SHOULD DISMISS THIS CASE FOR LACK OF JURISDICTION BECAUSE PLAINTIFF LACKS STANDING ................................................................. 2

II.  THE COURT SHOULD DISMISS THIS CASE FOR LACK OF JURISDICTION BECAUSE IT IS NOT RIPE ................................................................................................. 9

CONCLUSION ................................................................................................................................... 12

## TABLE OF AUTHORITIES

### CASES

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) .................................................................................................. 7, 9, 11

*Amer. Bird Conservancy, Inc. v. FCC*,
  516 F.3d 1027 (D.C. Cir. 2008) ..................................................................................... 8

*\*Amer. Petroleum Institute v. EPA*,
  683 F.3d 382 (D.C. Cir. 2012) .................................................................................. 8, 10

*Amer. Petroleum Institute v. EPA*,
  906 F.2d 729 (D.C. Cir. 1990) ....................................................................................... 8

*\*Belmont Abbey Coll. v. Sebelius*,
  Civil Action No. 11-1989, 2012 WL 2914417 (D.D.C. July 18, 2012) ................... *passim*

*Bland v. Fessler*,
  88 F.3d 729 (9th Cir. 1996) ........................................................................................... 3

*Causeway Med. Suite v. Foster*,
  43 F. Supp. 2d 604 (E.D. La. 1999) .............................................................................. 3

*Chamber of Commerce v. FEC*,
  69 F.3d 600 (D.C. Cir. 1995) ..................................................................................... 4, 5

*Ciba-Geigy Corp. v. EPA*,
  801 F.2d 430 (D.C. Cir. 1986) ....................................................................................... 8

*Cronin v. FAA*,
  73 F.3d 1126 (D.C. Cir. 1996) ....................................................................................... 9

*Eagle-Picher Indus., Inc. v. EPA*,
  759 F.2d 905 (D.C. Cir. 1985) ..................................................................................... 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
  528 U.S. 167 (2000) ....................................................................................................... 8

*Full Value Advisors, LLC v. SEC*,
  633 F.3d 1101 (D.C. Cir. 2011) ................................................................................... 11

*General Conference Corp. of Seventh-Day Adventists v. McGill*,
  617 F.3d 402 (6th Cir. 2010) ......................................................................................... 4

*Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries*,
    717 F. Supp. 2d 1101 (D. Idaho 2010) .................................................................................. 4

*Mintz v. Roman Catholic Bishop of Springfield*,
    424 F. Supp. 2d 309 (D. Mass. 2006) ................................................................................... 10

*Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't of Envtl. Conservation*,
    79 F.3d 1298 (2d Cir. 1996) .................................................................................................. 8

*Nat'l Treasury Emps. Union v. United States*,
    101 F.3d 1423 (D.C. Cir. 1996) ............................................................................................. 9

*\*Nebraska v. HHS*,
    No. 4:12CV3035, 2012 WL 2913402 (D. Neb. July 17, 2012) ............................................ 11

*N. H. Right to Life Political Action Comm. v. Gardner*,
    99 F.3d 8 (1st Cir. 1996) ........................................................................................................ 3

*Okpalobi v. Foster*,
    190 F.3d 337 (5th Cir. 1999) ................................................................................................. 3

*Presbytery of N.J. v. Florio*,
    40 F.3d 1454 (3d Cir. 1994) .................................................................................................. 4

*Pub. Serv. Comm'n v. Wycoff Co.*,
    344 U.S. 237 (1952) ..................................................................................................... 6, 7, 10

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
    489 F.3d 1279 (D.C. Cir. 2007) .................................................................................... 2, 3, 6

*Pub. Water Supply Dist. No. 8 v. City of Kearney*,
    401 F.3d 930 (8th Cir. 2005) ................................................................................................. 7

*Retail Indust. Leaders Assoc. v. Fielder*,
    475 F.3d 180 (4th Cir. 2007) ............................................................................................... 12

*Sackett v. EPA*,
    132 S. Ct. 1367 (2012) ........................................................................................................... 8

*Salvation Army v. Dep't of Cmty. Affairs of N.J.*,
    919 F.2d 183 (3d Cir. 1990) ............................................................................................ 4, 12

*Thomas More Law Ctr v. Obama*,
    651 F.3d 529 (6th Cir. 2011) ................................................................................................. 2

*Unity08 v. F.E.C.*,
    596 F.3d 861 (D.C. Cir. 2010) ................................................................................................ 3

*\*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ................................................................................................................ 3

## FEDERAL STATUTES AND REGULATIONS

2 U.S.C. § 437g(d) ........................................................................................................................ 5

29 U.S.C. §1132(a)(1)(B) ............................................................................................................. 3

29 U.S.C. §1132(a)(3) ................................................................................................................... 3

77 Fed. Reg. 16,501 (Mar. 21, 2012) ......................................................................................... 5, 7

77 Fed. Reg. 8725 (Feb. 15, 2012) ................................................................................................ 5

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 19 .......................................................................................................................... 4

Fed. R. Civ. P. 20 .......................................................................................................................... 4

## MISCELLANEOUS

HHS, Guidance on the Temporary Enforcement Safe Harbor (Aug. 15, 2012) ........................ 2, 5

**INTRODUCTION**

During the conference call in this case on August 3, 2012, the Court directed plaintiff to address in its opposition to defendants' motion to dismiss Judge Boasberg's decision in *Belmont Abbey College v. Sebelius*, Civil Action No. 11-1989 (JEB), 2012 WL 2914417 (D.D.C. July 18, 2012), in which the court dismissed a case nearly identical to this one for lack of standing and ripeness. Yet plaintiff's opposition hardly mentions Judge Boasberg's decision, much less makes any effort to distinguish it. Instead, plaintiff asserts – as did the plaintiff in *Belmont Abbey* – that it is harmed by the preventive services coverage regulations in their current form because there is a possibility that a third party could bring suit under the Employee Retirement Income Security Act ("ERISA") to enforce the regulations. Plaintiff, however, does not contend that any such suit has been brought or that any third party has threatened to bring a suit against plaintiff in the future. Nor does plaintiff insist that it will change its employee health plan because of the possibility of third-party lawsuits; instead, plaintiff has indicated that it intends to continue to offer an employee health plan that does not cover emergency contraception in its next plan year. The theoretical possibility that plaintiff could face a future lawsuit – where no civil or criminal penalties would be available – is not sufficient to establish standing or a ripe claim, particularly where the regulations plaintiff seeks to challenge are currently undergoing amendment to address the concerns raised by organizations like plaintiff and where plaintiff could raise as defenses the claims it asserts here if it were sued by a third party before those amendments are finalized. Judge Boasberg was aware of the possibility of third-party lawsuits when he concluded that, despite this "theoretical possibility of future hardship," the plaintiff in *Belmont Abbey* lacked standing and its claims were not ripe. 2012 WL 2914417, at *15. This Court should do the same.

**ARGUMENT**

I. **THE COURT SHOULD DISMISS THIS CASE FOR LACK OF JURISDICTION BECAUSE PLAINTIFF LACKS STANDING**

Defendants demonstrated in their opening brief that plaintiff lacks standing because it has not alleged a concrete and imminent injury resulting from the operation of the preventive services coverage regulations.  Plaintiff does not demonstrate otherwise in its opposition.

Plaintiff acknowledges that it qualifies for the enforcement safe harbor, pursuant to which defendants will not bring any enforcement action against plaintiff for failure to cover emergency contraception until at least January 1, 2014.[1]  *See* Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss ("Opp'n") at 10, 20, Aug. 16, 2012, ECF No. 18.  By that time, defendants will have amended the challenged regulations to accommodate religious organizations' religious objections to providing contraceptive coverage, like plaintiff's.[2]

Despite its eligibility for the safe harbor, plaintiff nevertheless maintains that it might be injured by the regulations in the future because of the possibility that a plan participant or beneficiary could bring an action against plaintiff under ERISA to enforce the regulations.  Opp'n at 10-15.  Plaintiff does not contend that any such action has been brought.  Nor does plaintiff assert that any third party has threatened to bring an action against plaintiff in the future.  Rather, according to plaintiff, the mere possibility of a third-party lawsuit in the future establishes an injury in fact.  But it does not.  The caselaw is clear: Possible future injuries are too speculative to confer standing.  *See, e.g.*, *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety*

---

[1] Defendants issued revised guidance on the safe harbor on August 15, 2012.  *See* HHS, Guidance on the Temporary Enforcement Safe Harbor (Aug. 15, 2012), *available at* http://cciio.cms.gov/resources/files/prev-services-guidance-08152012.pdf (last visited Aug. 20, 2012).  The revised guidance, which makes clear that plaintiff qualifies for the safe harbor, is attached as Exhibit A for the Court's convenience.

[2] Plaintiff's reliance on cases challenging the minimum coverage provision of the Patient Protection and Affordable Care Act to suggest that an injury is imminent despite the enforcement safe harbor, *see* Opp'n at 20 & n.18, is misplaced.  In those cases, unlike here, there was "no reason to think the law [would] change."  *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 538 (6th Cir. 2011).

2

*Admin.*, 489 F.3d 1279, 1294 (D.C. Cir. 2007) (reiterating the "settled principle[]" that "*[a]llegations of possible future injury do not satisfy the requirements of Art[icle] III*" (emphasis in original)); *Belmont Abbey*, 2012 WL 2914417, at *6 ("[A] threatened injury must be 'certainly impending' to confer standing; harm that is possible or even likely will not suffice." (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

      Relatedly, plaintiff claims that it is injured because the possibility of third-party lawsuits may pressure plaintiff to violate its religious beliefs. Opp'n at 12, 15. But plaintiff acknowledges that, come January 1, 2013 (the beginning of plaintiff's next plan year), plaintiff will continue to offer to its employees a health plan that does not cover emergency contraception. *Id.* at 1, 11, 26. Thus, plaintiff concedes that the speculative possibility of future third-party lawsuits has not had any coercive impact on plaintiff whatsoever. And for good reason: Unlike the cases plaintiff cites, where a party was threatened with civil fines and/or criminal prosecution for violating the law, *see id.* at 9 n.12 & 12 n.14,[3] a plan participant or beneficiary suing plaintiff under ERISA could obtain only equitable relief. *See* 29 U.S.C. § 1132(a)(1)(B), (a)(3). Here, the most likely relief would be an order requiring coverage of contraceptive services. Accordingly, *if* plaintiff were sued by a plan participant or beneficiary in the future, plaintiff, in its defense of such an action, would have an opportunity to raise its contention that the contraceptive coverage requirement violates the Religious Freedom Restoration Act ("RFRA") and the First Amendment. And, if plaintiff were to lose this hypothetical future ERISA action, the most plaintiff would have to do is provide coverage for emergency contraception – but only

---

[3] *See Unity08 v. FEC*, 596 F.3d 861, 865 (D.C. Cir. 2010) (plaintiff was subject to "criminal penalties" for violation of challenged provision); *Okpalobi v. Foster*, 190 F.3d 337, 343, 349 (5th Cir. 1999) (plaintiff was subject to "unlimited" tort damages); *Bland v. Fessler*, 88 F.3d 729, 737 & n.11 (9th Cir. 1996) (plaintiff was subject to "civil fines and private suits for damages" and state attorney general "ha[d] not stated affirmatively that his office [would] not enforce the civil statute"); *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996) (plaintiff was subject to "criminal penalties"); *Causeway Med. Suite v. Foster*, 43 F. Supp. 2d 604, 607-08 (E.D. La. 1999) (plaintiff was subject to criminal prosecution and civil damages).

after the court determines that the requirement does not violate RFRA or the First Amendment.[4] Delaying review under these circumstances does not create a concrete or imminent injury, particularly where the regulations plaintiff seeks to challenge are undergoing amendment to address concerns raised by organizations like plaintiff and thus any injury is even more speculative. *See Salvation Army v. Dep't of Cmty. Affairs of N.J.*, 919 F.2d 183, 193 (3d Cir. 1990) (concluding "the theoretical possibility of a suit against [plaintiff] by a program beneficiary" was not sufficient to establish jurisdiction despite plaintiff's assertion of First Amendment claims); *Presbytery of N.J. v. Florio*, 40 F.3d 1454, 1459-60, 1470-71 (3d Cir. 1994) (dismissing churches' First Amendment challenge to non-discrimination law as unripe where affidavit from State official indicated that State would not prosecute churches for violating law, even though law included a private enforcement mechanism whereby a successful plaintiff could recover damages and fines).

*Chamber of Commerce v. FEC*, 69 F.3d 600 (D.C. Cir. 1995), on which plaintiff relies heavily, is not to the contrary. That case involved a rule that limited the individuals to whom an organization could convey political messages and solicitations to those who were "members." *Id*. at 601. The FEC first defined "members" in 1976 and then, in 1993, promulgated a new, more restrictive definition. *Id*. at 601-02. The plaintiffs brought suit to challenge the new definition, claiming they were injured because the number of "members" to whom they could convey political messages and solicitations was significantly reduced under the new definition.

---

[4] Plaintiff suggests that it may not be able to raise RFRA as a defense in any future ERISA action because RFRA may not apply in suits between private parties. Opp'n at 14 n.15. As an initial matter, it is not at all clear that the cases plaintiff cites would apply where, as hypothesized here, a plan participant or beneficiary attempts to enforce a provision of federal law that an employer claims violates RFRA. And, in any event, the cases plaintiff relies on require only that the government be a party. *See, e.g.*, *Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 411 (6th Cir. 2010). If plaintiff were sued in the future under ERISA, it could join the government as a party and assert RFRA as a defense. *See* Fed. R. Civ. P. 19, 20. And, of course, plaintiff could also assert its First Amendment claims in any future ERISA action. *See, e.g.*, *Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries*, 717 F. Supp. 2d 1101, 1115-16 (D. Idaho 2010).

4

*Id*. at 602. At the time the plaintiffs brought suit, they had already suffered an injury because they had ceased political communications and solicitations to individuals who were not covered by the new definition. *Id*. at 602-03. In contrast, plaintiff here does not claim that it has begun providing coverage for emergency contraception in violation of its religious beliefs or that it will do so prior to the expiration of the safe harbor. *See* Opp'n at 1, 11, 20. Additionally, in *Chamber of Commerce*, the FEC's non-enforcement of the new rule was not the result of any sort of explicit, formal safe harbor, like it is here. Rather, the FEC merely lacked a sufficient number of votes to enforce the rule. *Id*. at 603. The Court noted that the FEC could change its mind "at any time" with a "change of mind of one of the Commissioners." *Id*. In contrast, in this case, defendants have announced in formal guidance that the enforcement safe harbor will be in place until the first plan year that begins on or after August 1, 2013 and defendants have announced in the Federal Register their intent to amend the regulations to accommodate organizations like plaintiff before that date. *See* HHS, Guidance on the Temporary Enforcement Safe Harbor (Aug. 15, 2012); 77 Fed. Reg. 8725, 8728 (Feb. 15, 2012); 77 Fed. Reg. 16,501, 16502-03 (Mar. 21, 2012). Furthermore, if a private party had brought an action to challenge the FEC's failure to enforce the new rule against the plaintiffs in *Chamber of Commerce*, the plaintiffs would have been subject to criminal penalties. *See* 2 U.S.C. § 437g(d). Here, as explained above, no similar civil or criminal penalties would be available in a private ERISA enforcement action against plaintiff. Finally, unlike in this case, there was no suggestion in *Chamber of Commerce* that the FEC was in the process of amending the challenged rule. For these reasons, *Chamber of Commerce* does not compel the conclusion that plaintiff in this case has suffered an injury in fact or that its claims are ripe.

Plaintiff also contends – contrary to Judge Boasberg's determination in *Belmont Abbey*, 2012 WL 2914417, at *9-10 – that the advance notice of proposed rulemaking ("ANPRM") does not render any injury speculative because the ANPRM does not indicate that defendants intend to amend the two aspects of the preventive services coverage regulations that plaintiff seeks to challenge. Opp'n at 16-17, 23-26. Plaintiff claims it is challenging only defendants' decision to define "preventive services" to include emergency contraception and defendants' decision not to exempt plaintiff from the coverage requirement. *Id.*

As an initial matter, plaintiff's new, narrow construction of its Complaint as challenging only the definition of "preventive services" is not credible. It is clear from the Complaint that plaintiff takes issue not only with defendants' interpretation of "preventive services," but also with the application of the preventive services coverage requirement to plaintiff.[5] *See* Compl. ¶¶ 45-228, July 18, 2012, ECF No. 1. Indeed, if plaintiff were pressing only a definitional challenge, its Complaint would be limited to an APA claim. More importantly, plaintiff's suggestion that this Court could review defendants' decision to include emergency contraception among the preventive services required to be covered and defendants' failure to exempt plaintiff from the coverage requirement without knowing what the forthcoming rulemaking will actually require of plaintiff (if anything) is severely flawed. The Court would essentially have to conclude that no set of amendments that defendants could promulgate would satisfy RFRA or the First Amendment. Such a ruling, however, would be the very definition of an advisory opinion. Until the Court knows what the regulations actually will require of plaintiff (if anything), the Court cannot know "what legal issues it is deciding." *Pub. Serv. Comm'n v. Wycoff Co.*, 344

---

[5] Plaintiff, of course, would lack standing to challenge the former absent the actuality of the latter, i.e., application of the contraceptive coverage requirement to plaintiff itself. *See Pub. Citizen*, 489 F.3d at 1292 (noting that, to confer standing, an injury must be particularized).

6

U.S. 237, 244 (1952). At this point, a decision on the merits of plaintiff's claims would result in the Court deciding issues that may never arise (because the regulations are undergoing amendment) or would entangle the Court in the ongoing rulemaking process by requiring it to issue an advisory opinion as to the legally acceptable parameters for not-yet-promulgated regulations. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds in Califano v. Sanders*, 430 U.S. 99, 105 (1977).[6]

Plaintiff further maintains – in an argument seeming to contradict the one just addressed – that the ideas set out in the ANPRM are unworkable and, in any event, conflict with plaintiff's religious beliefs. Opp'n at 19. This argument, however, serves only to further illustrate why the Court lacks jurisdiction over this case. Plaintiff is asking the Court to assess the lawfulness (and the feasibility) of regulations that do not yet exist because the ideas defendants have suggested to date are not satisfactory to plaintiff. But defendants have made clear that the ideas suggested in the ANPRM do not represent the full universe of ideas that they will consider adopting and have expressly invited alternative ideas. 77 Fed. Reg. at 16,503, 16,508. Plaintiff has opportunities – throughout the pending rulemaking – to express its concerns and to help shape the forthcoming amendments. And, indeed, plaintiff has been doing so. *See* Compl. ¶ 42 (indicating that plaintiff submitted comments on the ANPRM). As Judge Boasberg correctly determined, a plaintiff's "assumption" that it "will not be able to comply [with the amended regulations] without violating its religious beliefs" is "speculative," and "[i]t would . . . be premature" for a court to "find that the [forthcoming] amendment will not adequately address [p]laintiff's concerns." *Belmont Abbey*, 2012 WL 2914417, at *13; *see also Pub. Water Supply Dist. No. 8 v. City of Kearney*,

---

[6] Plaintiff's "whether"/"how" formulation, *see* Opp'n at 16-17, fares no better, as plaintiff does not explain how this Court would go about reviewing the question of "whether" plaintiff must comply with the regulations without first knowing "how" plaintiff can comply.

7

401 F.3d 930, 932 (8th Cir. 2005) (noting that courts should refrain from issuing "an opinion advising what the law would be upon a hypothetical state of facts" (quotation omitted)); *Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't of Envtl. Conservation*, 79 F.3d 1298, 1306 (2d Cir. 1996); *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436 (D.C. Cir. 1986) ("The interest in postponing review is powerful when the agency position is tentative. Judicial review at that stage improperly intrudes into the agency's decisionmaking process. It also squanders judicial resources since the challenging party still enjoys an opportunity to convince the agency to change its mind." (citations omitted)).

Plaintiff's attempt to recast defendants' standing argument as a question of mootness, Opp'n at 17-19; *see also id*. 25-26, also should be rejected.[7] The standing and mootness doctrines serve distinct interests. "Standing doctrine functions to ensure . . . that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 191 (2000). "In contrast, by the time mootness is an issue, the case has been brought and litigated, often . . . for years." *Id*. The mootness doctrine serves to avoid "abandon[ing] [a] case at an advanced stage" where doing so "may prove more wasteful than frugal." *Id*. at 192. Because this case has not been litigated "for years" and is not at "an advanced stage," *id*. at 191-92, the interests served by

---

[7] In attempting to re-write defendants' standing argument as a mootness argument, plaintiff relies on several cases that address standing, ripeness, and/or finality, not mootness. *See* Opp'n at 18. These cases do not establish that plaintiff has standing here or that its claims are ripe. In *American Petroleum Institute v. EPA*, the court concluded that a pending rulemaking did not render a challenge to a previously adopted rule unripe because the pending rulemaking was "entirely separate from" the challenged rule and the agency would not have any "occasion to refine" or change the challenged rule in the pending rulemaking. 906 F.2d 729, 739 (D.C. Cir. 1990). Similarly, in *American Bird Conservancy, Inc. v. FCC*, the "new docket" opened by the agency was not designed to address the problems identified by the plaintiff. 516 F.3d 1027, 1030, 1031 n.1 (D.C. Cir. 2008). And, in *Sackett v. EPA*, the agency offered only the possibility of future "informal discussion[s]." 132 S. Ct. 1367, 1372 (2012). Here, on the other hand, defendants have initiated a formal rulemaking that is specifically intended to amend the challenged regulations to address the concerns raised by organizations like plaintiff. *See Belmont Abbey*, 2012 WL 2914417, at *9. Thus, this case is more like *American Petroleum Institute v. EPA*, 683 F.3d 382 (D.C. Cir. 2012), in which the court concluded that the plaintiff's challenge to a regulation was not ripe where the agency had initiated another rulemaking that could significantly amend the challenged regulation.

the mootness doctrine simply are not implicated here. Accordingly, the Court should reject plaintiff's attempt to shift its burden to establish standing to defendants by requiring defendants to show that under no set of circumstances would plaintiff be adversely affected by the challenged regulations. Plaintiff has it backwards. It is plaintiff's burden – not defendants' – to demonstrate current or imminent injury stemming from the regulatory actions it seeks to challenge. Because plaintiff has failed to satisfy its burden, the Court should dismiss this case for lack of standing.

## II. THE COURT SHOULD DISMISS THIS CASE FOR LACK OF JURISDICTION BECAUSE IT IS NOT RIPE

Plaintiff contends that the Court need not consider ripeness if the Court concludes that plaintiff has standing. Opp'n at 20. Plaintiff reasons that the imminence requirement for standing and the constitutional requirements for ripeness are coextensive. *Id*. That may be the case, but defendants also invoked the prudential component of ripeness in their motion to dismiss. *See* Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss ("Defs.' Mot.") at 16-23, Aug. 10, 2012, ECF No. 17-1. Accordingly, even if the Court determines that plaintiff has standing, it still must consider whether plaintiff's claims are ripe under the test articulated in *Abbott Laboratories*, 387 U.S. at 149. *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (noting that, under "the prudential aspect of ripeness," the court evaluates "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration" (quotation omitted)); *Cronin v. FAA*, 73 F.3d 1126, 1130-31 (D.C. Cir. 1996) (concluding plaintiff had standing, but claim was not ripe).

Plaintiff maintains that the challenged regulations are fit for judicial review because they are final and they "emerged" after "a lengthy administrative process." Opp'n at 21. This argument, of course, ignores defendants "clear[] and repeated[]" statements that they intend to

amend the challenged regulations to address the concerns raised by religious organizations with religious objections to providing contraceptive coverage, like plaintiff. *Belmont Abbey*, 2012 WL 2914417, at *9. It also ignores the ANPRM, whereby defendants "initiated the amendment process." *Id*. Because defendants' position is "tentative" and "indeterminate" and because the forthcoming amendments may eliminate the need for judicial review entirely or at least narrow and refine the controversy, the regulations are not fit for judicial review. *Id*. at *12; *see* Defs.' Mot. at 18-20 (citing cases).[8]

Plaintiff also argues that its claims are fit for review because they "raise[] questions of law that are largely independent of any context-specific facts." Opp'n at 22. Defendants agree that plaintiff's claims are largely legal,[9] but that does not mean that further factual development is not warranted. One relevant – indeed, essential – fact that has yet to be determined is what the preventive services coverage regulations will actually require of plaintiff, if anything. Until that is known – and it will not be known until the pending rulemaking is completed – the Court cannot know what it is reviewing. *See Pub. Serv. Comm'n*, 344 U.S. at 244 (to be ripe for review, a case "must have taken on fixed and final shape so that a court can see what legal issues it is deciding . . ."); *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985) (court must consider whether it "will benefit from deferring review until the agency's policies have crystallized and the question arises in some more concrete and final form" (quotation omitted)); *Belmont Abbey*, 2012 WL 2914417, at *14 ("[C]ourts should refrain from 'intervening into matters that may best be reviewed at another time or in another setting,' even if the issue

---

[8] Plaintiff's meager attempt to distinguish *American Petroleum Institute v. EPA*, 683 F.3d 382 (D.C. Cir. 2012), *see* Opp'n at 24 n.23, is unavailing for the reasons explained by Judge Boasberg. *See Belmont Abbey*, 2012 WL 2914417, at *13.

[9] Defendants note, however, that the substantial burden analysis under RFRA is a fact-specific inquiry. *See, e.g.*, *Mintz v. Roman Catholic Bishop of Springfield*, 424 F. Supp. 2d 309, 319 (D. Mass. 2006).

presented is 'purely legal' and 'otherwise fit for review.'" (quoting *Full Value Advisors, LLC v. SEC*, 633 F.3d 1101, 1106 (D.C. Cir. 2011)).[10]

With respect to the second prong of the ripeness analysis, plaintiff maintains that it will suffer hardship if judicial review is delayed because it must begin planning now for the possibility that it will drop its health insurance coverage in January 2014. Opp'n at 26. Plaintiff further notes that its inability to offer health coverage in the future may impact its retention and recruitment efforts. *Id*. As defendants demonstrated in their opening brief, however, these allegations do not demonstrate a "direct and immediate" effect on plaintiff's "day-to-day business" with "serious penalties attached to noncompliance," as required to establish hardship. Defs.' Mot. at 21-22 (quoting *Abbott Labs.*, 387 U.S. at 152-53). Instead, they are contingencies that may arise in the future. And, as Judge Boasberg correctly determined, "[c]osts stemming from [a plaintiff's] desire to prepare for contingencies are not sufficient . . . to constitute a hardship for purposes of the ripeness inquiry – particularly when the agency's promises and actions suggest the situation [the plaintiff] fears may not occur." *Belmont Abbey*, 2012 WL 2914417, at *14; *see also Nebraska*, 2012 WL 2913402, at *23 ("[T]he plaintiffs' desire to plan for future contingencies that may never arise does not constitute the sort of hardship that can

---

[10] Plaintiff again claims that the forthcoming rulemaking will not impact the regulations' fitness as applied to plaintiff because plaintiff's challenge is limited to defendants' decision to define "preventive services" to include emergency contraception and defendants' decision not to exempt plaintiff from the coverage requirement. Opp'n at 23-26. Even if plaintiff were to amend its Complaint such that this were true, it would not render plaintiff's claims ripe for the reasons explained above. *See supra* pp. 6-7. Indeed, the district court in *Nebraska* rejected this same argument in a nearly identical case. *See Nebraska v. HHS*, No. 4:12CV3035, 2012 WL 2913402, at *22 (D. Neb. July 17, 2012) ("[A]lthough the Rule does settle the definition of 'religious employer' for the purposes of the contraceptive coverage exemption, it also states that the contraceptive coverage requirements will not be enforced until the Departments consider whether to adopt additional, broader religious accommodations. It seems to me that under these circumstances I should decline to review the defendants' tentative position on the scope of religious exemptions to the contraceptive coverage requirements. Adjudicating the plaintiffs' claims now would deny the Departments a full opportunity to modify their positions and undermine the interests of judicial economy.").

establish the ripeness of their claims[.]"). Plaintiff makes no effort to distinguish *Belmont Abbey* or any of the other cases cited in defendants' opening brief, *see* Defs.' Mot. at 21-22.[11]

Plaintiff also reiterates the contention – rejected in *Belmont Abbey* – that the possibility of a third-party ERISA action creates a hardship. Opp'n at 26-27. But plaintiff does not allege that any such suit has been brought against it, and, thus, this alleged hardship is purely theoretical. Hypothetical future hardship does not render a case ripe for review. *See Belmont Abbey*, 2012 WL 2914417, at *15; *see also Salvation Army*, 919 F.2d at 193 (concluding "the theoretical possibility of a suit against [plaintiff] by a program beneficiary" was not sufficient to establish jurisdiction). Because defendants are amending the challenged regulations to address concerns raised by organizations like plaintiff and plaintiff has not shown that it will suffer hardship during this amendment process, plaintiff's challenge is not ripe.

## CONCLUSION

For these reasons and those set forth in defendants' opening brief, plaintiff lacks standing to challenge the preventive services coverage regulations and its claims are not ripe. This Court, accordingly, should grant defendants' motion to dismiss.

Respectfully submitted this 20th day of August, 2012,

>STUART F. DELERY
>Acting Assistant Attorney General
>
>IAN HEATH GERSHENGORN
>Deputy Assistant Attorney General
>
>RONALD C. MACHEN JR.
>United States Attorney

---

[11] The one case plaintiff does cite, *see* Opp'n at 26, did not involve allegations of hardship from mere planning, and thus, it is not persuasive. *See Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 186-87 (4th Cir. 2007) (challenged law required plaintiff to alter its accounting practices *immediately* because existing accounting practices did not permit plaintiff to collect information that had to be reported under the challenged law).

JENNIFER RICKETTS
Director, Federal Programs Branch

SHEILA M. LIEBER
Deputy Director

 s/ Michelle R. Bennett
MICHELLE R. BENNETT (CO Bar No. 37050)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W., Room 7310
Washington, D.C. 20001
Tel: (202) 305-8902; Fax: (202) 616-8470
Email: michelle.bennett@usdoj.gov

*Attorneys for Defendants*